Harvey BELL et al.,
Plaintiffs-Appellants,

v.

IML FREIGHT, INC., et al.,
Defendants-Appellees.

No. 77–1296.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 15, 1978.
Decided Jan. 2, 1979.

John A. Criswell, Englewood, Colo. (Criswell & Patterson, Englewood, Colo., with him on the brief), for plaintiffs-appellants.

Marvin Gittler, Chicago, Ill. (Asher, Greenfield, Goodstein, Pavalon & Segall, Ltd., Chicago, Ill., and Hornbein, MacDonald & Fattor, Denver, Colo., with him on the brief), for defendants-appellees Locals No. 961 and 971 and the individual defendants.

Martin Semple, Denver, Colo. (Robert G. Good and Good & Stettner, P.C., Denver, Colo., with him on the brief), for defendant-appellee IML Freight, Inc.

Before SETH, Chief Judge, and BREITENSTEIN and LOGAN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The plaintiffs sue individually and on behalf of all similarly situated. The issue is the validity of a joint employer-union committee's decision which dovetailed certain seniority rights. Plaintiffs claim that under the collective bargaining agreement the committee exceeded its authority. The district court granted summary judgment for the defendants. We affirm.

Defendant-appellee IML Freight, Inc., transports freight by motor carrier from coast to coast and has a number of terminals, one of which is in Denver, Colorado. IML's over-the-road truck drivers domiciled in Denver are members of either Local 961 or Local 710, each of which is a labor union affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The labor relations of the parties are governed by a collective bargaining agreement entitled "National Master Freight Agreement" and two supplemental agreements. Drivers with runs east of Denver are covered by the Central States Area Supplement and are members of Local 710 or Local 961. Drivers with runs west of Denver are covered by the Western States Area Supplement and are members of Local 961.

The plaintiffs are members of Local 961. The defendants in addition to IML are the two local unions and three over-the-road drivers. Plaintiffs allege the loss of seniority rights. Their complaint presents three claims. The defendants all filed motions for summary judgment. The record presents no material factual dispute. The district court granted summary judgment for the defendants on claims (1) and (2) and dismissed (3) for insufficiency. This appeal is concerned only with claim (1).

Prior to February, 1976, IML maintained a dual seniority system for its over-the-road drivers domiciled in Denver. The drivers with runs east of Denver were placed on one seniority board and those with runs west of Denver were placed on another. A driver could not transfer from one board to another without losing his seniority rights.

In January, 1976, IML filed a Change of Operations Request with the National Grievance Committee. The request was for

permission to dovetail the two seniority lists into a single list. Art. 8, § 1(b) of the Master Agreement reads in part:

" * * * any question concerning the interpretation of the provisions contained in the Master Agreement, shall be submitted to a permanent National Grievance Committee which shall be composed of an equal number of Employer and Union representatives."

The National Grievance Committee assigned the employer's request to the Western Joint Area Committee. On notice, the Change of Operations Committee of the Western Joint Area Committee conducted a hearing with representatives of the employer and each union present. No one challenged the jurisdiction of the Committee. It approved the employer's request for dovetailing the seniority lists.

The interpretation of the national collective bargaining agreement controls the question of whether the Change of Operations Committee had jurisdiction to dovetail the seniority rights. As the trial court said, the decision deprived plaintiffs of seniority rights while other employees and union members benefitted. Although the employer sought to dovetail the rights, it has no concern with the result on individuals. The unions are in an ambivalent position because some of their members will benefit, and others will be hurt.

◼ The first problem is whether the plaintiffs, union members and employees, may maintain this suit under § 301, 29 U.S.C. § 185. The controversy relates to the jurisdiction of the Committee to make the seniority decision. Jurisdiction, in turn, depends on the provisions of the Master Agreement. The decision is that of a contract created committee, not an arbitration board. Technically, we are not concerned with an arbitration proceeding but often the courts have applied to contract committee decisions the same body of law as that pertinent to arbitration awards. See *Truck Drivers Union v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918. The general rule is that a fairly represented employee may not attack an arbitration decision

made in the context of a collective bargaining agreement. *Andrus v. Convoy Company*, 9 Cir., 480 F.2d 604, 606, and cases there cited, cert. denied 414 U.S. 989, 94 S.Ct. 286, 38 L.Ed.2d 228; see also *Satterwhite v. United Parcel Service, Inc.*, 10 Cir., 496 F.2d 448, 452, cert. denied 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674.

Uncertainty exists among the circuits whether unfairness, impropriety, or inadequacy of union representation is a prerequisite to judicial review of jurisdictional challenges by individual union-member employees. Some circuits have interpreted *Humphrey v. Moore*, 375 U.S. 335, 345, n. 8, 84 S.Ct. 363, 11 L.Ed.2d 370, as holding that a showing of impropriety or inadequacy is not required to support individual action. See e. g., *International Brotherhood of Teamsters v. Western Pa. Motor Carriers Assoc.*, 3 Cir., 574 F.2d 783, 786–787, cert. denied — U.S. ——, 99 S.Ct. 102, 58 L.Ed.2d 122. Others have held to the contrary. See e. g., *Harris v. Chemical Leaman Tank Lines*, 5 Cir., 437 F.2d 167, 171–172.

◼ We find it unnecessary to resolve the conflict. The plaintiffs do not claim that either local union acted improperly. Each local was in the unhappy position of representing members with conflicting interests. In the dilemma presented neither affected group of union-member employees had adequate representation to urge its views pertaining to the jurisdiction of the Committee. Plaintiffs rely on *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, but in that case the Court apparently only assumed that the committee's decision on jurisdiction was open to judicial review. Id. at 345, 84 S.Ct. 363. *Bieski v. Eastern Automobile Forwarding Company*, 3 Cir., 396 F.2d 32, 39–40 recognizes that representation of two groups with conflicting interests is inadequate but does not discuss the rights of individuals to sue under § 301. The district court held that the plaintiffs had standing because of inadequate representation. We agree. On this appeal each local supports the jurisdiction of the Committee. Jurisdiction of the Committee presents a substantial question

of contract interpretation and the affected union-member employees are entitled to present their position. If they are not permitted to do so, they are left without a remedy. We conclude that the plaintiffs have standing to maintain this action under § 301.

The Master Agreement provides, Art. 5, § 1, that:

"Seniority rights for employees shall prevail under this Agreement and all Agreements supplemental hereto."

A multi-level grievance procedure is provided by Art. 8. In the fall of 1975, a west-end driver filed a grievance requesting that the dual system of seniority be abolished. The matter was referred to a local grievance committee but a "deadlocked" decision was reached. The grievance then went to the area grievance committee and was there pending when IML presented its change of operations request to the National Grievance Committee. The area committee later held that the grievance was moot.

Plaintiffs point out that no question was raised regarding the jurisdiction of the grievance committee. They argue that since the dispute was first before the grievance committee it should have proceeded to final determination. Our problem is not what the area committee might or should have done. The National Grievance Committee sent the matter to another committee and the question is the jurisdiction of that committee.

Art. 5, § 7 of the Master Agreement reads in pertinent part:

"The Change of Operations Committee provided in the National Master Freight Agreement or the Supplemental Agreements shall have the authority to determine the establishment and application of seniority in those situations presented to them. In all cases the seniority decisions of the * * * Change of Operations Committees * * * shall be final and binding."

Art. 8 relates to grievance procedure. Section 6 provides:

"Present terminals, breaking points or domiciles shall not be transferred or changed without the approval of an appropriate change of operations committee. Such committee shall be appointed in each of the Conference Areas, equally composed of employer and union representatives. The change of operations committee shall have the authority to determine the seniority of the employees affected and such determination shall be final and binding."

Plaintiffs argue that the authority granted by Art. 5, § 7 is restricted by Art. 8, § 6, to situations arising out of an employer's request to transfer physically its terminals, breaking points, or employee domiciles. Under this view a change of operations within a single terminal, such as dovetailing two seniority lists, would not come within the bailiwick of the Committee.

Defendants present two arguments: (1) Art. 5, § 7 is a broad grant of authority giving the Committee jurisdiction over any seniority matter that might be referred to it, and (2) dovetailing of the seniority lists is a change of operations covered by Art. 8. Because we agree with (2), we have no need to consider (1).

Art. 8, § 6, covers "Change of Operations" and provides that terminals, breaking points, and domiciles shall not be "transferred or changed" without approval of an appropriate change of operations committee. We do not agree with the plaintiffs that the word "transfer" equates with the word "change" and requires some physical movement from one terminal to another before a Change of Operations Committee has jurisdiction. The questioned phrase uses the disjunctive "or." One of the meanings of "change" is "to alter, to make different." Webster's New International Dictionary, 2d ed. 1959, p. 448. The employer proposed a modified and different seniority system, the operation of which would affect the rights of the employees.

The cause of the dispute was the employer's request to change its method of operation. The National Grievance Committee considered the request and referred it to

the appropriate Change of Operations Committee. By such action the National Grievance Committee interpreted the contract to provide for reference to the Change of Operations Committee. The employer and both unions accepted this decision and do not now attack its validity.

 Acquiescence does not confer jurisdiction, but the parties' interpretation of their contract is persuasive. The decision of the National Grievance Committee is a reasonable interpretation of the contract. National policy as expressed in the various labor acts can be best effectuated if the settlement means chosen by the parties are "given full play." *Truck Drivers Union v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918, and cases there cited. We may not overrule the decision of the National Grievance Committee referring the matter to the Change of Operations Committee unless we can say "with positive assurance" that the decision was contrary to the Master Agreement. See *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409. We conclude that the contract authorized the action taken. Because the reference was proper and the matter was within the jurisdiction of the Committee, its decision, by the terms of the Master Agreement, is final and binding. The grant of summary judgment for the defendants was proper.

Affirmed.