LOCAL 17, AFFILIATED WITH the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Plaintiff,

v.

GARRETT FREIGHTLINES, INC., and Graves Truck Lines, Inc., Defendants.

Civ. A. No. 80–K–1685.

United States District Court, D. Colorado.

June 12, 1981.

John A. Criswell, Collie Edgar Norman, Criswell & Patterson, Englewood, Colo., for plaintiff.

William C. McClearn, James E. Hartley, Holland & Hart, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiffs brought this action seeking declaratory and injunctive relief and damages as a result of defendants'[1] decision to consolidate their Colorado trucking terminal facilities and local cartage services. In conjunction with this consolidation, a change-of-operations committee, composed of union and employer representatives, unanimously approved defendants' request to combine employee lists from the two companies into single seniority lists. Plaintiff, as representative of the affected employees, filed two claims for relief. The first claim is that the change-of-operations committee's decision is void because the committee lacked jurisdiction to make its decision. The second claim is that defendants violated the Sherman Act, 15 U.S.C. §§ 1 et. seq. Jurisdiction for the first claim is based on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; for the second claim it is based on 15 U.S.C. § 15 and 28 U.S.C.

§ 1337. Defendants moved for summary judgment, pursuant to F.R.Civ.P. 56. Briefs and affidavits have been submitted and the motion is now ripe for determination. No facts are in dispute.

## I. BACKGROUND

Plaintiff and both defendants are parties to the National Master Freight Agreement and the Western States Area Pick-Up and Delivery Local Cartage and Dock Workers Supplemental Agreement (hereinafter called the Supplemental Agreement), multi-employer, multi-union collective bargaining agreements that specify, *inter alia*, the procedures to determine the seniority rights of employees affected by employers' changes in operations. These two agreements create a three-tiered committee structure for handling grievances. Each committee is composed of an equal number of union and employer representatives. Matters that are deadlocked at one level are referred to the next committee level. In ascending level the committees are the Joint State Committees, the Joint Area Committees and the National Grievance Committee.

Several sections of the agreements deal with employee seniority when an operation is taken over or two operations are combined. Article 5, section 2 of the National Agreement provides general rules for "dovetailing" seniority rosters when an employer

> absorbs or acquires and operates the business of another private, contract, common or cartage carrier, or is a party to a merger of lines.[2]

The pertinent part of article 8, section 6(a) of the National Agreement provides:

> Present terminals, breaking points or domiciles shall not be transferred or

---

1. Each defendant is a wholly-owned subsidiary of ANR Freight Systems, Inc.

2. In full, Section 2(a) provides:

   In the event the Employer absorbs or acquires and operates the business of another private, contract, common or cartage carrier, or is party to a merger of lines, the seniority of the employees who are affected thereby shall be determined by mutual agreement between the Employer and the Local Unions involved.

   In the application of this Section, it is immaterial whether the transaction is called a merger, purchase, acquisition, sale, etc. Further, it is also immaterial whether the transaction involves merely the purchase of stock of one corporation by another, with two separate corporations continuing in existence.

   Sections 2(b)–(f) then provide general rules for dovetailing seniority rosters.

changed without the approval of an appropriate Change of Operations Committee. Such Committee shall be appointed in each of the Conference Areas, equally composed of Employer and Union Representatives. The Change of Operations Committee shall have the authority to determine the seniority of the employees affected and such determination shall be final and binding.

Article III, part (A) of the National Committee Rules of Procedure, adopted under article 8, section 6(b), directs employers whose proposed changes of operation involve employees in more than one area to file the proposal with the National Committee. Part (B) then specifies that the National Committee will assign the proposal to the change-of-operations committee for one of the areas.

Article 44, section 4 of the Western States Area Supplemental Agreement supplements article 8, section 6:

> Present terminals, breaking points, or domiciles shall not be transferred or changed nor shall there be any transfers of equipment between terminals which will adversely affect the employment opportunities of the employees at the terminal from which such transfer of equipment is to be made without the Employer first having asked for and received approval from the Committee on Change of Operations, the members of which shall be appointed by the Joint Western Area Committee at each regular meeting.

In July, 1980, defendants filed their first change-of-operations request with the National Committee, outlining their proposal for consolidating their trucking terminal facilities and local cartage services. Defendants withdrew this proposal, but then submitted a modified proposal to the National Committee on October 1, 1980. Because these proposals affected employees in both the Western Joint and Central Joint Areas, defendants submitted them to the National Committee. On October 8, 1980, the National Committee assigned the second proposal to the Western Joint Area Committee. On November 4, 1980, a Change of Operations Committee with union and employer representatives from both the Western and Central Joint Areas approved defendants' proposed change of operations, including a dovetailing of seniority lists. Plaintiff then filed this complaint.

## II. JURISDICTION OF THE CHANGE OF OPERATIONS COMMITTEE

Plaintiff argues that I should declare the Change of Operations Committee's decision void because the Committee lacked jurisdiction to affect any employee's seniority rights.[3] I find that the Committee had jurisdiction to issue its decision and therefore grant defendants' motion for summary judgment with respect to plaintiff's first claim for relief.

■ Because national labor policy favors the voluntary resolution of labor disputes, doubts regarding arbitrability and a grievance committee's authority are to be resolved in favor of the voluntary resolution. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). However, because the obligation to arbitrate stems solely from contractual provisions that the parties bound themselves to, the courts must independently determine whether the contract granted the committee jurisdiction to issue its decision. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964). Plaintiff's argument is that one of the conditions of article 5, section 2(a) of the National Agreement, *i. e.* an absorption or an acquisition and operation of a business or a merger of lines, must be present for the Change of Operations Committee to have jurisdiction to issue its decision. I find that even if none of these conditions

**3.** Plaintiff's complaint lists two other arguments for finding the Committee's decision void: lack of proper notice of the proposed change and no reason for having a multi-conference committee hear the proposed changes. Plaintiff did not re-assert either of these arguments in its opposition memorandum and I find them to be without merit.

were present the Committee still had jurisdiction to issue its decision.[4]

▋ If none of the conditions of article 5, section 2(a) are present in a proposed change, then section 2 will not explicitly apply to the proposal. There is nothing in that section, however, stating that it is the exclusive section governing changes in operations.[5] Nor does it limit the application of other sections. Therefore, article 8, section 6 of the National Agreement and article 44, section 4 of the Supplemental Agreement will apply to some changes in operations that are not covered by article 5, section 2. Because these latter sections require approval from the appropriate Change of Operations Committee[6] before terminals may be "transferred or changed" they impliedly vested the committee with jurisdiction to issue its decision approving the changes in terminal operations and dovetailing of seniority lists in the present case. It is probable that defendants would have breached the agreements if they had not obtained committee approval of the changes.

Plaintiff cites *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), and *Bieski v. Eastern Automobile Forwarding Co.*, 396 F.2d 32 (3d Cir. 1968), in support of its argument that the conditions of article 5, section 2 must be met in order for the committee to have jurisdiction. Neither of these cases support plaintiff's position. In *Humphrey* the court assumed, *arguendo*, that the section of that contract equivalent to article 5, section 2 limited the arbitration committee's jurisdiction and found that the plaintiff would still lose. The court did not, however, adopt this limited view of the committee's jurisdiction. 375 U.S. at 345, 84 S.Ct. at 369.[7] In *Bieski* the court found that there had been an absorption and therefore that contract's provision analogous to article 5, section 2 required the arbitration committee to exercise its jurisdiction. 396 F.2d at 38–39. The court did not state that the committee's jurisdiction was limited to cases arising under that section, but stated that another article's general arbitration provisions might also vest the committee with jurisdiction. *Id.*

*Bell v. IML Freight, Inc.*, 589 F.2d 502 (10th Cir. 1979), is controlling here. In *Bell* the court held that the Change of Operations Committee had jurisdiction because the dovetailing of seniority lists is a "change of operations" covered by article 8, section 6 of the applicable contract, which was a verbatim copy of the same provision in the present case's contract. *Id.* at 505. Only one employer was involved in *Bell*; the present case involves an even greater "change of operations" because some employees are being transferred to a new employer.

## III. SHERMAN ACT VIOLATION

▋ Plaintiff's second claim for relief, brought as a class action on behalf of some

---

**4.** Because of my resolution of this motion, it is unnecessary for me to determine whether any of these conditions were in fact present.

**5.** To the contrary, article 5, section 1 states: "This Section is also subject to provisions of this Agreement relating to Changes of Operations and Mergers of Companies as hereinafter provided."

**6.** Although article 44, section 4 provides that the appropriate change-of-operations committee is normally one appointed by the Joint Western Area Committee, that section is superseded by article 8, section 6(b) of the National Agreement when employees from more than one area are affected. In the present case, employees from more than one area were affected, and defendants properly followed the National Committee's Rules of Procedure III(A)

and (B) by applying to the National Committee. See note 3 *supra*.

**7.** The contract provision in *Humphrey* that is analogous to article 5, section 2 of the contract in the present case contained an additional sentence: "Any controversy with respect to such matter shall be submitted to the joint grievance procedure." 375 U.S. at 338, 84 S.Ct. at 366. This provision was apparently the basis for the court's statement that this section "by its own terms appears to limit the authority of the committee to disputes over seniority in the event of an absorption. *Id.* at 345 n.8, 84 S.Ct. at 370 n.8. Because that additional provision is absent from Article 5, section 2, I do not need to consider whether it would change my conclusion.

of its members,[8] is that the changes in operations effected by the defendants violated section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff concedes, however, that *Reibert v. Atlantic Richfield Co.*, 471 F.2d 727 (10th Cir.), *cert. denied*, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973), is directly on point and bars such an action here. In *Reibert* plaintiff brought a class action alleging that he and 4,000 other employees lost their job because of defendants' illegal merger. The court stated that there are two elements that a plaintiff must establish to prove that the antitrust violations proximately caused his injury:

> (1) there is a causal connection between an antitrust violation and an injury sufficient to establish the violation as a substantial factor in the occurrence of damage; and

> (2) that the illegal act is linked to a plaintiff engaged in activities intended to be protected by the antitrust laws.

*Id.* at 731 (citing *Billy Baxter, Inc. v. Coca-Cola Co.*, 431 F.2d 183 (2d Cir. 1970), *cert. denied*, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971)). The court found that plaintiff had not proved either element of this test. First, he could not show that his job loss resulted from the lessening of competition:

> Termination of employment will often occur whether a merger is legal or illegal. It is the natural effect flowing from two similarly structured businesses combining their assets to maximize efficiency.... 'the loss of their rights of employment is not a result of any lessening of commercial competition.'

*Id.* (citations omitted). The court also found that plaintiff could not prove the second element:

> [Defendant's] termination of employment does not affect the area legislatively protected [by the Sherman Act]. At best, [plaintiff's] discharge was no more than an outgrowth of the alleged unlawful merger. He has failed to show the neces-

sary directness of injury caused by the illicit acts. [He] is not in the area of economy endangered by a breakdown of competitive conditions, and thus lacks standing to sue.

*Id.* at 732. Because *Reibert* is binding precedent, I find that plaintiff has not stated a cause of action under the Sherman Act.

IT IS ORDERED that defendants' motion for summary judgment is granted. It is further

ORDERED that this complaint and civil action are hereby dismissed. Each party to bear its own costs.

---

8. Because of my disposition of this claim, I do not decide whether a union may bring a class

action on behalf of some of its members.