**Ernest J. CARPENTER et al., Plaintiffs,**

**v.**

**John F. BRADY, Individually, and as agent for the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, Defendant.**

Civ. No. 5-63-116.

United States District Court
D. Minnesota,
Fifth Division.
April 22, 1965.

Milan S. Balach, Duluth, Minn., for plaintiffs.

James J. Courtney & Sons, by Edward D. Courtney, Duluth, Minn., and Mulholland, Hickey & Lyman, by James L. Highsaw, Jr., Washington, D. C., for defendant.

DONOVAN, District Judge.

This case was brought pursuant to the Labor-Management Reporting and Disclosure Act, Title 29 United States Code § 401 et seq. It arises out of an amendment to the working agreement between defendant Brotherhood and the Duluth, Missabe and Iron Range Railroad (herein referred to as the railroad) affecting the seniority rights of plaintiffs.

The instant case arises out of a dispute between two locals of defendant Brotherhood. The railroad is divided into two divisions: the Missabe division and the Iron Range division. Local 319 of defendant Brotherhood represents the Duluth dock workers who are in the Missabe division. Local 216 of defendant Brotherhood represents the Two Harbors dock workers who are in the Iron Range division. Plaintiffs are the Duluth dock workers and defendant is agent for the Brotherhood. In all references to the union or the locals, it will be understood that all are members of defendant Brotherhood.

It appears from the pleadings and evidence that the railroad operated two docks for the loading of iron ore onto vessels for shipment to the steel mills in the East. The Missabe docks are located in Duluth and the Iron Range docks are located at Two Harbors, some thirty miles nearer to the lower lake ports. The seniority rights of the dock workers were determined by the basic working agreement of October 1, 1953. This contract called for separate seniority rosters for each docking facility. A man from one dock would have to go to the bottom of the list if he went to work on the other dock.

The iron mining industry in Minnesota has been undergoing a change in recent years. The high-grade ore reserves, for which northern Minnesota had been famous, has reached a point of industrial exhaustion. What remains is too expensive to produce from the open pits and underground mines. As a result the mining industry in northern Minnesota now extracts much of its iron from taconite.[1]

1. Savage v. Kaiser Motors Corporation, D.C.Minn., 131 F.Supp. 355, 357, 358; Reserve Mining Company v. Mesabi Iron Company, D.C.Minn., 172 F.Supp. 1, 7, 8.

Necessarily, shipments by railroad and water have been materially reduced. This has caused unemployment in and about the docks with which we are here concerned. The railroad owned both docks during all of the times herein.

Before opening of the 1963 season, the railroad announced the closing of the Two Harbors dock. The Brotherhood negotiated an amendment to the basic agreement on April 22, 1963, providing for a dovetailing of the seniority rosters on a one-for-one basis.

Plaintiffs bring this action to set aside the amendment on the ground that it was negotiated in bad faith and designed to deprive plaintiffs of their rights under the 1953 contract. In support of this contention plaintiffs submitted proof to the effect that during the four or five seasons prior to the closing of the Two Harbors dock, shipments of ore over the Duluth dock had fallen off to a considerable extent. The Two Harbors dock was not as seriously affected. This disparity resulted in unemployment among the dock workers at Duluth, while Two Harbors dock workers with substantially less seniority were enjoying more seasonable employment. Hence, the Two Harbors dock workers evinced opposition to a suggested idea of a combined seniority roster. Plaintiffs also claim that there have been several instances of preference to Two Harbors men over Duluth men. They complain and argue that the Brotherhood has shown disregard of their needs but has acted promptly when the Two Harbors men were adversely affected.

Defendant claims that he acted in good faith in all respects and that his actions were in accord with the policies of the Brotherhood and in accordance and as expressed in Resolution 98. Resolution 98 advocates a policy of "follow the work" in cases of shifting of jobs from one site to another.

Defendant testified that the amendment was worked out on the comparison of the average tonnage shipped over each dock for the past twenty years. The tonnage was roughly equal. The basis used for dovetailing the rosters was one for one naming a Duluth man first. However, once called, the date of employment was used for bidding on the available jobs.

The issues are:

1. Is the April 22, 1963 amendment to the working agreement fair and equitable under the facts of this case?

2. Did defendant act in good faith in negotiating the amendment?

A union (the Brotherhood in this case) must fairly represent all the groups for which it bargains.[2] Discrimination based upon unreasonable distinction is prohibited.[3] The Brotherhood espouses a policy of "follow the work" in cases of closing of one facility and shifting of the work load to another facility. In recent years the Brotherhoods have been faced with this type of problem all too frequently. Increased efficiency has led to consolidations and reduction in jobs. The worker whose job is moved to another facility has a real interest in his job and may understandably want to follow it to the new location. Senior men at the closing facility should not lose their jobs to junior men at the transferee facility.[4]

Plaintiffs have shown that for a period of about five years prior to the closing of the Two Harbors dock, more ore was sent over that dock than the Duluth dock. In 1961 and 1962 the differences were substantial. No action was taken by the Brotherhood to allow the Duluth men to work at Two Harbors other than at the end of the Two Harbors seniority roster. Mr. Charles E. Kief, a grand vice-president of the Brotherhood, stated that had he been assigned to the problem he would

2. Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173.

3. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

4. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370.

have seen what could have been done for the Duluth men.[5] When the railroad announced the closing of the Two Harbors dock, the Brotherhood negotiated the amendment which constitutes the dispute in the case at bar.

The Court is of the opinion that the facts of the present case do not show basic unfairness which would necessitate an annulment or renegotiation of the April 22, 1963 amendment. When a facility closes, the Brotherhood must act to protect its members. Defendant claims that Resolution 98 requires the taking of this action. Plaintiffs contend Resolution 98 does not apply and claim the Brotherhood has the duty without regard to Resolution 98 to protect its plaintiff members. The Court is of the opinion that the amendment as negotiated appears to be as equitable as possible under the circumstances.

The propriety or impropriety of the Brotherhood's failure to act during the period prior to closing of the Two Harbors dock is at most to be considered as evidence of bad faith. Plaintiffs seek no damages for this period but only for the period after the amendment.

The other incidents of alleged preference given to Two Harbors employees appear to be preferences given by the railroad. Plaintiffs contend that the Brotherhood failed to effectively obtain a reversal of these acts of preference. The Brotherhood denies misconduct on its part and states that all complaints have been duly processed.

As indicated supra the general policy expressed in Resolution 98 is fair and equitable whether it has specific application here or not. Men with seniority are normally those of more advanced years. They will find it increasingly difficult to secure employment at other jobs. If their jobs are moved, they should be allowed to follow them and not be barred by the seniority system in the transferee district.

Henry J. Bernard was the representative of the Missabe local at the meetings during which the agreement was negotiated. He voted against the agreement on instruction of said local. He testified in this case and admitted that he considered the agreement as fair under the circumstances.[6] He helped negotiate a contract change in as fair a manner as possible, but any combination of seniority rosters would have been unacceptable to the Missabe employees.

The Missabe employees appealed the discision of the Adjustment Board on the agreement of April 22, 1963 to the grand president and to the Executive Council. Their appeals were denied. The final appeal to the convention was not perfected because it meets only every four years and a long delay would result if plaintiffs waited until the next convention which does not meet until 1967.

The method used by defendant may have worked to such disadvantage to plaintiffs as to be cause of complaint and dissatisfaction as their able counsel argued orally and by brief. The result reached accords with good faith and does not exceed defendant's authority.

Under the evidence of the instant case, plaintiffs have not sustained their burden of showing unfairness and bad faith.[7] The amendment of April 22, 1963 is fair and equitable. The Brotherhood's failure to seek such a change at an earlier date is not sufficient to convince the Court that the amendment is unfair.

For the above reasons plaintiffs' prayer for relief is denied.

The parties will bear their own costs and disbursements.

Defendant may prepare and submit findings of fact, conclusions of law, order for and form of judgment consistent with the foregoing.

It is so ordered.

An exception is allowed the plaintiffs.

5. Transcript of proceedings page 231.

6. Transcript of proceedings page 469.

7. Humphrey v. Moore, 375 U.S. 335, 347, 348, 349, 84 S.Ct. 363, 11 L.Ed.2d 370; Ford Motor Co. v. Huffman, 345 U.S. 330, 336, 343, 73 S.Ct. 681, 97 L.Ed. 1048.