[Civ. No. 28526.   Second Dist., Div. Two.   Nov. 18, 1965.]

WILLIAM D. MARTIN et al., Plaintiffs, Cross-defendants and Appellants, v. LOS ANGELES METROPOLITAN TRANSIT AUTHORITY et al., Defendants, Cross-complainants and Respondents; TRANSPORTATION UNION et al., Cross-defendants and Appellants; BROTHERHOOD OF RAILROAD TRAINMEN et al., Cross-defendants and Respondents.

I. J. Gromfine, Brundage, Hackler & Roseman, Brundage & Hackler and Zimring, Gromfine & Sternstein for Plaintiffs, Cross-defendants and Appellants. and Cross-defendants and Appellants.

Musick, Peeler & Garrett and Bruce A. Bevan, Jr., for Defendants, Cross-complainants and Respondents.

James L. Crawford, Bodle & Fogel, George E. Bodle and Stephen Reinhardt for Cross-defendants and Respondents.

FLEMING, J.—Class action to terminate and distribute a union pension trust.

Prior to 1958, two privately-owned transit companies, Los Angeles Transit Lines (LATL) and Metropolitan Coach Lines (MCL), served the Los Angeles metropolitan area. The LATL employees were represented by Transportation Union, Division 1277, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America (Amal-

gamated); the MCL bus operators were represented by the Brotherhood of Railway Trainmen (BRT); and the MCL clerks were represented by the Brotherhood of Railway Clerks (BRC).

In 1958 a public transit corporation, the Metropolitan Transit Authority (MTA) took over the operations of both LATL and MCL. (Stats. 1957, ch. 547.) Representation elections were held, and new bargaining units were formed. (*Sheets* v. *Los Angeles Metropolitan Transit Authority,* 56 Cal.2d 481 [15 Cal.Rptr. 156, 364 P.2d 332].) Former LATL and MCL employees were scattered among the three unions according to their job classifications. The seniority rights, wage rates, work assignments, and pension plans of both groups have been integrated into a single system. Appellants, former LATL employees, object to the methods used to integrate the pension plans and claim that their pension rights have been impaired by the MTA plan.

The LATL and MCL pension plans had little in common. The LATL plan was a funded, contributory plan, containing a trust fund to which both employer and employees contributed to secure payment of accrued liabilities. The MCL plan, on the other hand, was a nonfunded, noncontributory pension plan, under which the employer promised to pay pensions but did not set aside a trust fund to secure its promise and to which the employees contributed nothing. When MTA took over these plans, it undertook to unify them in order to obtain federal tax benefits (26 U.S.C.A. §§ 401, 404, 501), and employed a pension consultant to work out a unified system. The consultant recommended that the LATL plan be continued in existence and amended to bring former MCL employees into the plan, and that within the amended plan all present employees be given identical pension credits for previous service, whether with LATL or with MCL. Funding of the plan was to be accomplished by using the LATL trust fund to guarantee past service credits for former LATL employees, and by requiring MTA to contribute over a 30-year period an amount necessary to guarantee past service credits for former MCL employees. The MTA plan was submitted to the BRT, BRC, and Amalgamated, and put into effect after each union signed an agreement accepting the plan.

Subsequently, appellants brought this class action on behalf of all former LATL employees covered by the LATL pension plan and now employed by MTA. They asked that

the LATL pension trust be terminated and its assets distributed to them, arguing that although MTA should continue to provide pensions for all employees it should assume the burden of funding past service credits for all employees without the benefit of the existing pension trust. The trial court rejected these claims and entered judgment for respondents. This appeal followed.

■ 1. Appellants contend they have been discriminated against by the amendments to the LATL plan. They argue that the LATL trust fund belongs to former LATL employees, and that MTA is using it to fund past service credits for former LATL employees while at the same time funding past service credits for former MCL employees from its own pocket. In effect, appellants argue, MTA is using their money to discharge its own obligations. This argument is based on the premise that the LATL trust fund belongs to the former LATL employees, a premise which we do not accept. Although former LATL employees would recover their contributions if the trust fund were distributed, the trust fund has not been distributed but rather continues to be held in trust to secure the payment of pension benefits. The trust fund which formerly secured payment of LATL pensions now secures payment of MTA pensions covering the same employees. Although former MCL employees undoubtedly benefit from MTA's promise to contribute the amount of their past service liability to the trust fund, the promise was designed to equalize the treatment of the two groups of employees and give MCL employees the benefits previously given to LATL employees. We do not think it discriminatory to give one group a benefit which raises them to the level of a group which has received the same benefit at an earlier date.

■ Appellants also claim that the adoption of the MTA plan by their unions was a form of discrimination against them which violated a duty of fair representation imposed by the MTA Act. They argue that the MTA Act gave employees the right to bargain collectively, and the right to bargain collectively necessarily imposes a correlative duty on the union to represent all employees in the bargaining unit fairly. Assuming that a duty of fair representation applies, we do not think it has been violated, first, because we do not find that former LATL employees have been discriminated against, and second, because the objective of an integrated pension plan was neither arbitrary nor hostile to the em-

ployees' interests. As the United States Supreme Court said in *Humphrey* v. *Moore,* 375 U.S. 335, 350 [84 S.Ct. 363, 11 L.Ed.2d 370] : "As far as this record shows, the union took its position honestly, in good faith and without hostility or arbitrary discrimination."

2. Appellants next contend the new plan adversely affects their vested interests in the LATL pension plan, in violation of the original LATL pension agreement and the Metropolitan Transit Authority Act. (Stats. 1957, ch. 547, § 3.6, subd. (e) ; Stats. 1959, ch. 519, § 3.6, subd. (e).) The terms of the original LATL pension agreement provided for future modification but specified that any "amendment or modification [should not] adversely affect any rights theretofore acquired by any Participant in or with respect to the proceeds of contributions theretofore made under the plan by the Participants or by the Corporation. . . ." Thus the LATL plan, like other pension plans, provided an adjustable structure to which additions could be made from time to time without destroying the original framework. Hence the real issue is not whether changes were made in the plan but whether or not the changes, considered as a whole, left the beneficiaries of the plan in the same, or an improved, relative position.

Appellants rely on *Allen* v. *City of Long Beach,* 45 Cal.2d 128 [287 P.2d 765], a case dealing with changes in the pensions of police and firemen in Long Beach, which lays down the rule that "alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages." (45 Cal.2d at 131.) They claim this standard has not been met. Respondents argue the *Allen* case is inapplicable, because MTA has the status of a private employer and not that of a government employer in all labor matters (*Los Angeles Metropolitan Transit Authority* v. *Brotherhood of Railroad Trainmen,* 54 Cal.2d 684, 689, 690 [8 Cal.Rptr. 1, 355 P.2d 905]) ; but that in any event the requirements outlined in *Allen* have been satisfied.

For purposes of this case we assume that the standard of the *Allen* case applies. But having applied this standard we find that its requirements have been met. There was ample evidence of comparable new advantages given to former LATL employees sufficient to offset possible disadvantages

resulting from changes in the plan. Pension benefits were increased from $60 to $70 a month, the former $750,000 limitation on the employer's required yearly contribution was abolished, and increased representation on the pension committee was given to the employees. The advantages brought about by the changes outweighed any disadvantages and made the amendments reasonable under the *Allen* test. (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438 [326 P.2d 484].)

3. Appellants' next contention is that the trust fund security for the payment of their benefits has been diluted by the admission of former MCL employees—and their unfunded pension obligations—into the unified plan. Integrity of funding is important to employees, for the fund guarantees that the promised benefits will be paid. The cost of providing pensions for service performed prior to the adoption of a pension plan is called past service liability. Although full funding would provide employees with maximum security, most pension plans are always in the process of funding past service liabilities to secure the payment of enlarged benefits. (AFL-CIO, *Pension Plans Under Collective Bargaining*, ch. 7.)

Under the MTA plan, past service liability was funded in two ways. Liabilities to former LATL employees were funded by the continued use of the LATL trust fund; liabilities to former MCL employees were funded by the promise of MTA to contribute the amount of those liabilities to the new trust fund. Because MTA has amortized past service liability of its MCL employees over a 30-year period, appellants claim they would receive reduced amounts on liquidation were the trust terminated and its assets distributed prior to the end of the 30-year period. They demand that MTA return the LATL trust fund to former LATL employees, credit all employees for their past service, and fund the total past service liability for all employees from MTA funds. But if this were done, the net result would be that former LATL employees would obtain double payment for past services while former MCL employees would receive only single payment for identical services. Such a program would cure a hypothetical discrimination by substituting a real discrimination.

The possibility of termination of the pension plan of a public transportation system by legislative action or by agreement among the parties appears remote. The Legislature has protected the pension rights of employees in the original

MTA Act (Stats. 1957, ch. 547, § 3.6, subd. (e)), in subsequent amendments (Stats. 1959, ch. 519, § 3.6, subd. (e)), and in the new Southern California Rapid Transit District Act (Stats. 1965, First Ex. Sess. 1964, ch. 62, § 1). Additionally, the unions retain the power to protect their members' interests by collective bargaining. Although in the event of premature termination former LATL employees might be less secure under the MTA plan than they would have been under their former plan, so long as the plan continues to function their rights are fully protected by the trust fund. By contrast, if the trust fund were distributed to its contributors, all security guaranteeing past service credits would vanish, and appellant's pension rights would be considerably less assured than they are today under the MTA plan.

4. Finally, appellants argue that the trust should be terminated and its assets distributed because its object has become impossible or unlawful under Civil Code, section 2279. We find no merit in this contention. The object of the trust—to provide a security fund for the payment of employees' pensions—has not changed. The changes in the scope of the trust were brought about by the integration of two separate groups of employees into one and the elimination of differences between the two in order to provide equal benefits for both groups. Such changes did not make the purpose of the trust illegal nor its object impossible.

Judgment affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 12, 1966.