Argued July 6, reversed September 21, petition for
rehearing denied November 16, 1966

# SKINNER *v.* LYNCH ET AL

418 P. 2d 498
420 P. 2d 58

*Donald W. McEwen,* Portland, argued the cause for appellant. With him on the briefs were Cake, Jaureguy, Hardy, Buttler & McEwen, Portland, and Heiss, Day & Bennett, Harold C. Heiss and Russell B. Day, Cleveland, Ohio.

*Carl R. Neil,* Portland, argued the cause for respondents. With him on the brief were Krause, Lindsay & Nahstoll, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

O'CONNELL, J.

These actions, consolidated for trial, were brought by employees of Southern Pacific Company against a union official to recover compensatory and punitive damages for the alleged violation of their right under

the Railway Labor Act to fair representation in the application of union rules. Defendant appeals from a judgment in favor of plaintiffs.

Defendant is the local chairman of Lodge No. 542 of the Brotherhood of Locomotive Firemen and Enginemen (BLF & E) which is the bargaining agent for all firemen employed by the Southern Pacific Company. Plaintiffs, seven in number, are veteran firemen assigned to a labor pool under the jurisdiction of Lodge No. 542. Some of the plaintiffs are members of the BLF & E; some are not.

The alleged discrimination arises out of the enforcement of one of the provisions of an agreement between Lodge No. 542 and Southern Pacific Company which states, in essence, that a fireman accumulating 3,800 miles of work in any monthly period shall be relieved for the remainder of the period. The pertinent part of the agreement is set out in the margin.[①]

---

[①] Paragraph 11 of the agreement provides as follows:

"No individual engineer or fireman * * * shall be privileged to start a trip or day's work out of his home terminal after having earned 3,800 miles or the equivalent thereof in any month or checking period applicable to such individual, in service paying freight rates of pay. Should an engineer or fireman be required by the Company to start such trip or day's work out of his home terminal because relief engineers or firemen were not available, or should a trip of day's work that an engineer and/or fireman was privileged to start out of his home terminal result in earnings in excess of 3,800 miles or the equivalent thereof, such earnings in excess of 3,800 miles for the month or checking period shall be carried forward to the credit of and registered by said engineer or fireman as part of his mileage earnings in the next succeeding month or checking period.
* * * * *
"An engineer or fireman failing to request relief in writing to avoid starting a trip or day's work out of his home terminal after having earned 3,800 miles or the equivalent thereof for the month or checking period; or who exceeds such earnings except when privileged to start a trip or day's work out of

The purpose of this provision is to stabilize employment by preventing senior firemen from working more than the maximum mileage specified, thus making any excess mileage available to junior firemen. Plaintiffs allege that defendant "discriminatorily, arbitrarily, wilfully, maliciously and with intent to cause economic harm" to plaintiffs applied the rule to them but not to other firemen in their pool. Plaintiffs contend that the rule was first enforced against two of them who were not members of the BLF & E to force them to join that union and that the rule was later enforced against the other plaintiffs, two of whom were members of the union and four of whom were not, to make it appear that union recruitment was not defendant's motivation for applying the rule.

■ The evidence is sufficient to support the charge of malicious discrimination. The principal question is whether such discrimination will give rise to a cause of action for damages under the circumstances of this case.

■ It was the duty of defendant as the agent of BLF & E not to discriminate unfairly against any member of the unit for which it was the bargaining agent.[2]

---

his home terminal resulting in exceeding such earnings; or when required by the Company to continue in service; or who fails to register his correct current mileage earnings; shall, upon a written request for such action, addressed to the Superintendent by the local chairman having jurisdiction, be held off the working list of engineers or firemen two calendar days for each 100 miles or fraction thereof earned in excess of 3,800 miles during the month or checking period, or until he correctly registers his current mileage earnings."

[2] Humphrey v. Moore, 375 US 335, 84 S Ct 363, 11 L Ed2d 370 (1964); Conley v. Gibson, 355 US 41, 78 S Ct 99, 2 LEd2d 80 (1957); Tunstall v. Brotherhood, 323 US 210, 65 S Ct 235, 89

■■ Plaintiffs, as members of the bargaining unit, were entitled to fair representation in the administration of the collective bargaining agreement. But it does not follow that plaintiffs are entitled to recover damages in the present case. Damages are recoverable only if plaintiffs can show a measurable pecuniary loss flowing from defendant's conduct. The jury computed plaintiffs' compensatory damages on the basis of lost wages resulting from time lost on the job after plaintiffs had completed the maximum mileage under the 3,800 mile rule. But under the agreement plaintiffs had no right to work in excess of the maximum mileage. The 3,800 mile rule was adopted to prevent firemen with seniority from working more than the maximum mileage so that there would be jobs for firemen who were juniors on the seniority scale. Therefore, if there were junior firemen waiting for employment (which appears to have been the situation in the present case), plaintiffs were not deprived by defendant's conduct of anything to which they were entitled under the agreement.[9] Since plaintiffs had no right to work in excess of 3,800 miles, it is difficult to see how the deprivation of the additional mileage, even if done with a malicious purpose, could constitute the measure of plaintiffs' damage. To support such a measure of damages plaintiffs must, in effect, assert that the maximum mileage rule should be disregarded for the purpose of computing their loss. Since plaintiffs lost nothing to which they were entitled, they

---

LEd 187 (1944); Steele v. L. & N. R. Co., 323 US 192, 65 S Ct 226, 89 LEd 173 (1944); Thompson v. Brotherhood of Sleeping Car Porters, 316 F2d 191 (4th Cir 1963); Ferro v. Railway Express Agency, 296 F2d 847 (2d Cir 1961); Nobile v. Woodward, 200 F Supp 785 (E.D. Pa 1962).

[9] Plaintiffs would have the burden of proving that there were no junior firemen on the waiting list.

·must rest their claim upon the deprivation of working time which would be made available to them only as a result of a violation of the agreement to which they subscribed—a violation in which they themselves participated.

This is not like the cases relied upon by plaintiffs where the union or bargaining agent, in the discriminatory enforcement of a rule or other administrative preferment, deprives the complaining employee of a work opportunity to which he would otherwise be entitled.[⑳]

We recognize that unless money damages are recoverable employees are not likely to seek relief in the courts against discriminatory action by union officials, but it is not our duty to allow an indefensible measure of damages in order to provide a workable sanction. If a money recovery is desirable in a case such as this, the Railway Labor Act should make provision for it.

The judgment is reversed.

**ON REHEARING**

---

[⑳] See cases cited supra at note 2.

Carl R. Neil and Krause, Lindsay & Nahstoll, Portland, for the petitioner.

Cake, Jaureguy, Hardy, Butler & McEwen and Donald W. McEwen, Portland, and Heiss, Day & Bennett and Russell B. Day, Cleveland, Ohio, contra.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, O'CONNELL, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

Plaintiffs have filed a petition for rehearing contending that our opinion and decision is erroneous in two respects.

■ It is first asserted that we misconstrued the pleadings and the record as to the basis upon which compensatory damages were claimed by plaintiffs and awarded by the jury. Plaintiffs sought compensation for the loss of wages during the periods of their suspension. In our opinion we referred to the alleged damages "on the basis of lost wages resulting from time lost on the job after plaintiffs had completed the maximum mileage under the 3,800 mile rule." We noted that plaintiffs "rest their claim upon the deprivation of working time which would be made available to them only as a result of their violation of the agreement." We intended to say, and thought we said clearly enough, that since the 3,800 mile provision was enforceable, there was no right to mileage overages and therefore no right to wages lost during suspension for mileage overages.

Plaintiffs' second contention is that the record shows a "modification" of the agreement making inapplicable the 3,800 mile limitation to firemen in the Klamath Falls-Crescent Lake freight pool during the period of the alleged violation of the agreement by plaintiffs.

The modification relied upon is found in an exchange of letters between defendant and the Southern Pacific Company. Defendant's letter, dated March 13, 1960, is in substance a request for the company's concurrence in the decision of Lodge 542 to discontinue the registration requirement for firemen in the Klamath Falls-Crescent Lake freight pool. In a letter dated March 25, 1960, the company concurred in this proposal. In a letter dated December 15, 1961, the company informed defendant that the request and concurrence referred to above "were in violation of the Firemen's Agreement." Plaintiffs contend that the registration requirement was modified from March 25, 1960 to December 15, 1961. Plaintiffs fail to mention that in February, March, and May, 1961, Lodge 542 sent to each member of the lodge bulletins making it clear that the registration requirement was to be observed.[1]

It will be recalled that the alleged violations of the agreement occurred in April, May, and June of 1961. From the evidence taken as a whole it is ap-

---

[1] February bulletin: "We presently still have Firemen cut off the working list. Therefore, we ask that each individual respect Article 43 of the agreement in an attempt to restore these men as soon as practical. Your cooperation concerning this matter will be greatly appreciated."

March bulletin: "Business has recently improved, and as a result some of the furloughed Firemen have been restored to the working list. However, until such a time as all of these men are restored the miles will continue to be enforced."

May bulletin: "The miles are still being enforced as in accordance with Article 43 of the agreement covering Firemen."

parent that Lodge 542, after lifting the registration requirement, changed its policy and subsequently required registration. The second "modification" was as effective as the first. There is no evidence that either of these changes with respect to the registration requirement was made in accordance with the procedures required for a modification of the agreement by Article 37, section 19 of the system-wide agreement.[2] The jury would have had no basis for treating the first change lifting the registration requirement any differently than the second change reinstating the requirement. Furthermore, even accepting plaintiffs' argument that the exchange of letters resulted in a modification of the *registration* requirement until December 15, 1961, it is not shown that the agreement between defendant and Southern Pacific Company in any way altered the *mileage limitation* provision itself. Rather, the record indicates that the Company continued to account for total miles earned during a checking period by utilizing the Company payroll records in Portland.

The petition for rehearing is denied.

---

[2] The procedure prescribed by Article 37, section 19 is that before a proposed rule is submitted to the General Manager of the Company and the General Chairman of the Firemen, it must be a special rule "made by Local Officials of the Company and the Local Grievance Committee of the Firemen." The "agreement" in the present case does not meet this requirement.