United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2004

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

**No. 03-40418**
_____

**Stavros E. Fanos, on behalf of himself
and those similarly situated,**

**Plaintiff-Appellant**

**-vs-**

**Maersk Line, Ltd., Maersk Sealand,
A. P. Moller Group, Maersk, Inc., Wilmington
Trust, Expander Transport Corporation,
Expediter Transport Corporation, Expresser
Transport Corporation, Exporter Transport
Corporation, and Extender Transport Corporation,**

**Defendants-Appellees.**

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS and EMILIO M. GARZA, Circuit Judges, and LITTLE[*], District Judge.

LITTLE, District Judge:

Stavros E. Fanos, a former radio electronics officer and member of the American Maritime

Officers Union ("the union"), appeals an adverse summary judgment in his action seeking wages and

penalty wages. The district court made three holdings in the alternative: (1) the vacation pay at issue

is not a seaman's wage within the meaning of 46 U.S.C. § 10313, (2) even if the vacation pay were

[*] District Judge of the Western District of Louisiana, sitting by designation.

a wage, the wage penalty claim would fail because the pay was not wrongfully withheld, and (3) this claim is barred by laches. The district court, therefore, granted defendants' motion for summary judgment, which resulted in a dismissal with prejudice. The district court concluded correctly that pay was not wrongfully withheld. The judgment of the district court is AFFIRMED.

## I. Factual & Procedural Background

In 1982, the United States Department of Navy, Military Sealift Command ("MSC") awarded defendant Maersk Line, Ltd. ("Maersk Line") a contract for the construction and operation of five Maritime Preposition Ships ("MPS"). Following the award of the contract, Maersk Line created five so-called E companies[1] to be designated contractors for purposes of performing the MPS contract. Under financing arrangements for the vessels, defendant Wilmington Trust Company ("WTC") was and remains the owner trustee of each vessel. WTC bareboat chartered each vessel to one of the E companies. Each E company, in turn, time chartered each vessel to the MSC. The ships were placed in operation in 1984 and 1985.

In 1982, Maersk Line and each of the E companies entered preliminary collective bargaining agreements with the union for the employment of licensed deck and engine room officers on the MPS vessels. In 1984, prior to the vessels being placed in service, each E company entered an amended collective bargaining agreement with the union. The vacation pay section of the collective bargaining agreement provided the following: "For all days of covered employment, officers shall receive fifteen (15) days of paid vacation for each thirty (30) days of such employment." This provision has changed several times and now entitles officers to nineteen (19) days of paid vacation for each thirty (30) days

---

[1]The five E companies are the following defendants: Expander Transport Corporation, Expediter Transport Corporation, Expresser Transport Corporation, Exporter Transport Corporation and Extender Transport Corporation.

2

worked. The collective bargaining agreements require employers of union members to join the various union benefit plans and to contribute to the plans. These plans are independent entities governed by trustees.

In 1985, the E companies and the union signed a memorandum of understanding which eliminated the employers' duplicate benefits contributions. Duplicate benefits contributions previously occurred on "overlaps days," days when two officers are aboard a ship to perform one job. Paragraphs II(A) and II(B) of the 1985 memorandum of understanding eliminates duplicate benefits contributions with the following language:

> (A) There shall not be any duplication of contributions to the various [union] plans, Committees or Services. (B) When processing a vacation benefit application the [union] Vacation Plan shall deduct one day of covered employment before calculating the benefit payable. Such deduction shall be for employment commencing on or after March 1, 1985 and per non-continuous pay periods.

The union agreed to this amendment in order to prevent the loss of jobs.

The defendants are not required to pay the vacation benefit directly to the employees. Defendants are merely required to make contributions to the American Maritime Officers Union Vacation Plan ("the Plan"). The Plan, in turn, manages and distributes these funds. Fanos does not allege that defendants did not make proper contributions to the Plan. Fanos argues that the withholdings pursuant to the 1985 memorandum of understanding were improper.

Fanos bottoms his suit on two main arguments: (1) that the vacation benefit is a seaman's wage under 46 U.S.C. § 10313, and (2) that the 1985 memorandum of understanding, which reduced the benefit, was an illegal agreement under 46 U.S.C. § 10317. Fanos also alleges that the memorandum of understanding is unenforceable because he was never informed of its existence.

3

Plaintiff, therefore, seeks the amount allegedly wrongfully withheld as well as the statutory penalty.[2]

Both appellant and appellees provide extensive arguments for and against a finding that the vacation benefits at issue are "wages" within the meaning of 46 U.S.C. § 10313. For purposes of this opinion, it is unnecessary to make such a determination. Without deciding, this court herein assumes that the vacation benefits at issue are "wages" within the meaning of 46 U.S.C. § 10313. Also due to the analysis that follows, it is unnecessary to determine the applicability of the equitable doctrine of laches.

## II. Standard of Review

This is an appeal from the district court's grant of summary judgment. "A summary judgment is reviewed *de novo*, using the standard applied by the district court." *Governor and Co. of Bank of Scotland vs. Sabay*, 211 F.3d 261, 265 (5th Cir. 2000). The record is viewed in the light most favorable to the non-movant and summary judgment is proper only when the summary judgment record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195 (1994).

## III. Analysis

Given the assumption that the vacation benefits are wages, this court must determine whether defendants' actions were proper. The pertinent part of the wage penalty statute, 46 U.S.C. § 10313, states the following:

---

[2]It is uncontested that plaintiff's claim, which includes actual lost wages and the double penalty mandated by 46 U.S.C. § 10313(g), exceeds $4 million. Plaintiff brought the suit as a class action. Although the case was not certified as a class action, it is further uncontested that the class claim, including the statutory penalty, would exceed $2 billion.

(f) At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. When a seaman is discharged and final payment of wages is delayed for the period permitted by this subsection, the seaman is entitled at the time of discharge to one-third of the wages due the seaman.

(g) When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

The United States Supreme Court in Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570, 102 S.Ct. 3245, 3249 (1982), explained the two prongs used to determine the application of the wage penalty statute: (1) whether the master or owner refused to pay wages within the specified period, and (2) whether this failure to pay was without sufficient cause. See also 46 U.S.C. § 10313. The wage penalty statute is inapplicable to the instant scenario under both prongs.

The first prong asks whether the withholding was conducted by the "master or owner," not merely whether the withholding occurred. The defendants acknowledge that the one-day deduction occurred. The defendants, however, argue that the Plan, not the defendants, was responsible for the withholding. Furthermore, Fanos does not allege that defendants did not make proper contributions to the Plan. Pursuant to the collective bargaining agreements, the defendants are required to make contributions to the Plan, but the distribution of the vacation pay is an obligation of the Plan, not the employer. Any alleged withholding or non-payment of vacation pay, therefore, cannot form the basis of a claim against defendants. The first prong of the Griffin case is not satisfied and, therefore, the wage penalty statute is inapplicable.

Even if the first prong were satisfied, the second prong is not satisfied. The second prong asks whether the failure to pay was without sufficient cause. Whereas the plaintiff argues that the failure to pay was without sufficient cause, the defendants argue that the 1985 memorandum of understanding signed by the union and the E companies provides sufficient cause.

In Collie v. Ferguson, 281 U.S. 52, 55, 50 S.Ct. 189, 191 (1930), the United States Supreme Court characterized "without sufficient cause" as "either conduct which is in some sense arbitrary or

willful, or at least a failure not attributable to impossibility of payment." A union is its members' exclusive bargaining agent in the negotiation and administration of a collective bargaining agreement. See Humphrey v. Moore, 375 U.S. 335, 342, 84 S. Ct. 363, 368 (1964); cf. Cactus Pipe & supply Co. v. M/V Montmartre, 756 F.2d 1103, 1111 (5th Cir. 1985) (stating that "[m]aritime law embraces the principles o f agency"). Although an employer cannot rely on a bargaining agent's apparent authority when the employer has knowledge to the contrary, see Goclowski v. Penn Cent. Transp. Co., 571 F.2d 747, 759 (3d Cir. 1978), plaintiff has shown no evidence indicating that the union was not authorized to negotiate the terms of its members' employment. The 1985 memorandum of understanding, therefore, provides sufficient cause for the withholding of the vacation benefits. Because sufficient cause exists, the wage penalty statute is certainly inapplicable.

On a final note, Fanos further argues that 46 U.S.C. § 10317 makes the 1985 amendments to the collective bargaining agreement void. 46 U.S.C. § 10317 states as follows:

> A master or seaman by any agreement other than one provided for in this chapter may not forfeit the master's or seaman's lien on the vessel or be deprived of a remedy to which the master or seaman otherwise would be entitled for the recovery of wages. A stipulation in an agreement inconsistent with this chapter, or a stipulation by which a seaman consents to abandon a right to wages if the vessel is lost, or to abandon a right the seaman may have or obtain in the nature of salvage, is void.

As indicated by the district court below, this statute is inapplicable to the instant situation. The 1985 memorandum of understanding did not deprive Fanos of any "remedy." The memorandum of understanding between the union and the employers modified the payment of vacation benefits. The modification of a benefit is not a modification of a remedy.

## IV. Conclusion

The district court concluded correctly that pay was not wrongfully withheld. The plaintiff received all compensation to which he was entitled. The judgment of the district court, therefore, is AFFIRMED.