## TUCKER FREIGHT LINES, INC. *v.* KONKLE

[No. 1167A88. Filed November 12, 1968. Rehearing denied December 5, 1968. No Petition to Transfer filed.]

*Isadore D. Rosenfeld,* of South Bend, for appellant.

*George P. Roberts,* of South Bend, and *George T. Patton,* of South Bend, for appellee.

PFAFF, J.—This action was brought by the appellee, Merwin K. Konkle, against the appellant, Tucker Freight Lines, Inc., for breach of contract.

The cause was tried to the court on appellee's amended complaint and appellant's answer thereto. Following trial of said cause the court entered the following special finding of facts and conclusions of law:

"1. The court, at the request of the plaintiff, makes the following amended finding of facts:

"a. That on or about the 1st day of January, 1951, the plaintiff was employed by the defendant, Tucker Freight Lines, Inc., hereinafter referred to as the Defendant Company, as a truck driver, and that the plaintiff became, and continued to be a member in good standing of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereinafter referred to as the Teamsters Union.

"b. That the Teamsters Union was and continued to be the duly constituted and certified Bargaining Agent for all of the Defendant Company's drivers, including this plaintiff.

"c. That thereafter, on the 1st day of August, 1955, the plaintiff was transferred to the Gary Terminal of the Defendant Company and that the plaintiff became and continued to be a member in good standing of Local Union Number 142.

"d. That on or about the 1st day of February, 1958, the Teamsters Union, including Local 142, representing the drivers with the Defendant Company's Gary, Indiana, terminal, including this plaintiff, entered [in]to a collective bargaining agreement entitled CENTRAL STATES AREA OVER THE ROAD MOTOR FREIGHT AGREEMENT with the defendant, and which contract was to run until February 1, 1961; which contract was introduced into evidence and marked ———.

"e. That among other things the contract between the Defendant Company and the Teamsters Union, representing the Defendant Company's employees including this plaintiff, specifically provided in Article 5, Section 2, that the employer should not require as a condition of continued employment that an employee purchase truck, truck and/or tractor and trailer or other vehicular equipment.

"f. That on or about the 29th day of April, 1955, the defendant company and the Teamsters Union adopted a new schedule of rates for owner-operators, but did not amend the contract in any respect whatsoever.

"g. That on or about the 29th day of April, 1959, and ever since, the Defendant Company, with the knowledge and consent of the agents, servants and employees of the Teamsters Union, has failed and refused to provide the plaintiff with employment because the plaintiff refused to purchase his own truck and lease it to the Defendant Company, or in the alternative to purchase a truck from the Defendant Company.

"h. That the plaintiff performed all the things which under the contract he was required to.

"i. That the Defendant Company kept in its employ men with less seniority than the plaintiff, including employees: Mack, Divich, Piper, Folk, Butzler, Theilbar, Shidaker, Miles, Gakle, Beckwith, Wright, Eskridge, Kloss, Templeton, Thorndyke, Gaw and Carr.

"j. That under the contract the plaintiff would have made $2.53 an hour for eleven (11) hours, five (5) days a week, for every week from April 23, 1959, to February 1, 1961, for a grand total of Twelve Thousand Nine Hundred Forty and 95/100 ($12,940.95) Dollars, and that during this period of time the plaintiff actually made Seven Thousand Five Hundred Ninety-eight and 03/100 ($7,598.03) Dollars, and that the difference, which if [is] Five Thousand Three Hundred Forty-two and 92/100 ($5,342.92) Dollars, is the measure of the plaintiff's damages,

"AND on said facts states the following conclusions of law:

"1. The law is with the plaintiff.

"2. The defendant violated its contract with the plaintiff.

"3. The plaintiff is entitled to the sum of Five Thousand Three Hundred Forty-two and 92/100 ($5,342.92) Dollars as damages for the breach by the defendant of its contract with its employees, including the plaintiff."

Upon such special finding of facts and conclusions of law the court entered judgment that the plaintiff (appellee) have and recover against the defendant (appellant) the sum of $5,342.92, together with costs of the action.

Thereafter, appellant filed its motion for a new trial, the grounds of which motion are as follows:

1. The decision is not sustained by sufficient evidence.

2. The decision is contrary to law.

3. The decision is not sustained by sufficient evidence and is contrary to law.

Said motion was subsequently overruled and the appellant assigns as error to this court the overruling of said motion.

Appellant contends that appellee failed to exhaust the grievance procedures provided in the collective bargaining agreement and that said failure is a good defense to a cause of action against appellant for breach of the agreement.

Article X of the "Over the Road Motor Freight Agreement" provides as follows:

"Discharge or Suspension. The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Union affected, except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is dishonesty or drunkenness, or recklessness resulting in serious accident while on duty, or the carrying of unauthorized passengers. The warning notice as herein provided shall not remain in effect for a period of more than nine (9) months from date of said warning notice. Discharge must be by proper written notice to the employee and the Union affected. Any employee may request an investigation as to his discharge or suspension. Should such investigation prove that an injustice has been done an employee, he shall be reinstated and compensated at his usual rate of pay while he has been out of work. Appeal from discharge or suspension must be taken within ten (10) days by written notice and a decision reached within fifteen (15) days from the date of discharge or suspension. If no decision has been rendered within fifteen (15) days, the case shall then be taken up as provided for in ARTICLE VIII, Section I, of this Agreement."

The evidence discloses that the appellee herein was the Union Steward of Local 142 of the Teamsters Union at Gary, Indiana. As such Steward he received and processed grievances of the members of the said Union. When a grievance arose he first asked the aid of the Business Agent of the Local Union and then the company was presented with a written copy of such grievance. The evidence further discloses that the appellee never presented a written grievance to the Union or the appellant company concerning his dismissal from employment.

In *Republic Steel Corporation v. Maddox* (1965), 379 U. S. 650, 85 S. Ct. 614, 13 L. Ed. 2d 580, the Supreme Court of the United States stated:

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed. 370; National Labor Relations Board v. Miranda Fuel Co., 2 Cir., 326 F.2d 172. But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stablizing the 'common law' of the plant. LMRA § 203 (d), 29 U. S. C. § 173(d); § 201 (c), 29 U. S. C. § 171 (c) (1958 ed.). Union interest in prosecuting employees grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the unions prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.

"A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a sitatuion 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' *Local 174, Teamsters etc. v. Lucas-Flour Co*. 369 U. S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed. 2d 593."

The court, further speaking on the question of severance, said:

"There are, then, positive reasons why the general federal rule should govern grievances based on severance claims as it does others. Furthermore, no positive reasons appear why the general federal rule should not apply. 'Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of Lincoln Mills,' and 'the subject matter of § 301(a) "is peculiarily one that calls for uniform law." ' *Local 174, Teamsters etc., v. Lucas Flour Co.*, 369 U. S., at 103, 82 S. Ct., at 576. Maddox' suit in the present case is simply on the contract, and the remedy sought, award of $694.08, did not differ from any that the grievance procedure had power to provide. Federal law governs 'Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . . Section 301(a) of the LMRA, 29 U. S. C. § 185(a) (1958 ed.). *Textile Workers v. Lincoln Mills, supra*. The suit by Maddox clearly falls within the terms of the statute and within the principles of *Lincoln Mills*, and because we see no reason for creating an exception, we conclude that the general federal rule applies."

The United States Supreme Court reaffirmed this view in *Vaca v. Sipes* (1967), 386 U. S. 171, 87 S. Ct. 903, 17 L. Ed. 2d 842, where it stated:

"However, if the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractural rights may be enforced. For this reason, it is settled that the employee must at least attempt to exahust exclusive grievance and arbitration procedures established by the bargaining agreement. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L. Ed. 2d 580."

In the opinion of this court the evidence is clear that appellee did not exhaust the established grievance procedures as required by the law announced in the above cited authorities.

Therefore, the judgment of the St. Joseph Superior Court is hereby reversed with instructions to said court to enter judgment for appellant in conformity with this opinion.

Bierly and Smith, JJ., concur.

Cook, P.J., not participating.

NOTE.—Reported in 241 N. E. 2d 371.