**A. W. WALTERS et al., Plaintiffs-Appellants,**

v.

**TEAMSTERS LOCAL UNION 612, an unincorporated association and Ryder Truck Lines, Inc., a corporation, Defendants-Appellees.**

No. 28049.

United States Court of Appeals, Fifth Circuit.

May 13, 1970.

**1156**

Robert S. Vance, Birmingham, Ala., for plaintiffs-appellants.

T. Eric Embry, Birmingham, Ala., L. N. D. Wells, Jr., Mullinax, Wells, Mauzy, Levy & Richards, Dallas, Tex., for Local Union 612.

James M. Fullan, Jr., John J. Coleman, Jr., Allen Poppleton, Birmingham, Ala., Morgan, Lewis & Bockius, J. David Mann, Jr., and Richard C. Hotvedt, Washington, D. C., for Ryder Truck Lines.

Before COLEMAN, GOLDBERG, and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge.

This appeal is prosecuted by fifty-five truck drivers who allege that they were adversely and illegally affected by a referendum which changed the seniority system governing their employment. By a majority vote, in that referendum, the over-the-road drivers employed in a multi-state area by Ryder Truck Lines changed their seniority system from "terminal seniority" (i. e., a separate seniority roster at each terminal) to "modified seniority" (i. e., a single seniority roster for all Ryder's over-the-road drivers in the entire area).

Appellants attacked the validity of the referendum by first complaining to the appropriate labor-management grievance committee that holding the referendum violated the terms of their collective bargaining contract. They were unsuccessful.

Having exhausted their grievance committee remedies, they then brought suit in the District Court against both their employer (Ryder) and their union (Teamsters Local 612). Under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, they sought injunctive relief, damages, and a declaration that the change in the seniority system violated their rights under the contract. The trial court deferred the question of damages, but otherwise the case was tried on the merits (without a jury) on November 25, 1968. On February 24, 1969, the court entered detailed findings of fact and conclusions of law, resulting in a judgment that the fifty-five drivers were not entitled to any relief. We affirm.

I

THE FACTS

The trial court found the facts as follows:

"1. Plaintiffs are over-the-road truck drivers employed by defendant, Ryder Truck Lines, Inc. (Ryder), at its Birmingham terminal. Ryder is an interstate common carrier of freight by motor truck with terminals and employees in the states of Alabama, Georgia, Florida, Tennessee, Louisiana, and Mississippi.

"2. Teamsters, Chauffeurs, Warehousemen and Helpers Local Union 612 (Local 612) is the authorized collective bargaining representative of plaintiffs and the other over-the-road truck driver employees of Ryder's Birmingham, Alabama, terminal. Local 612 together with Southern Conference of Teamsters and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America were the authorized collective bargaining representatives of plaintiffs and other over-the-road truck driver employees of Ryder's Birmingham, Alabama, terminal in the negotiation of and amendments to the National Master Freight Agreement and Southern Conference Area Supplemental Agreement involved herein. Trucking Employers Inc. and the Southeastern Area Motor Carriers Labor Relations Association were the authorized collective bargaining representatives of Ryder with respect thereto.

"3. The bylaws of Local 612 (Article IX, § 9) provide:

'Every member by virtue of his membership in this local Union authorizes this Local Union to act as his exclusive bargaining representative with full and exclusive power to execute agreements with his employer governing terms and conditions of employment and to act for him and have final authority in presenting, processing and adjusting any grievance, difficulty or dispute arising under any collective bargaining agreement or out of his employment with such Employer, in such manner as the Local Union or its officers deem to be in the best interests of the Local Union.'

"4. The collective bargaining agreement prescribing plaintiffs' terms of employment consists of the 'National Master Freight Agreement' and 'Southern Conference Area Supplemental Agreement' which were negotiated between Trucking Employers Inc. and the Southeastern Motor Carriers Labor Relations Association for Ryder and the International Brotherhood of Teamsters for Local 612.

"5. By virtue of Article XXVIII of Local 612's bylaws, the constitution of the International Brotherhood of Teamsters is binding on Local 612. Article XVI, § 4, of the International Constitution requires that when negotiations are conducted, as was done in the present case, the result of such negotiations 'shall be submitted to the membership covered by said contract proposal for their approval or rejection' and further provides that all employers entering into such negotiations will be so advised. The same provisions of Local 612's bylaws also provides:

'No agreement or contract shall be binding upon this Local Union unless executed and delivered by its duly authorized officers.'

"6. The caption of the master agreement states that it is 'for the period April 1, 1967, through March 31, 1970'. Article 37 thereof recites that the agreement shall be in full force and effect from April 1, 1967, and the final provision of such agreement is as follows:

'IN WITNESS WHEREOF the parties hereto have set their hands and seals this 5th day of May, 1967, to be effective as of April 1, 1967, except as to those areas where it has been otherwise agreed between the parties.'

The area supplemental agreement carries the same April 1, 1967, date in its caption. Article 62 thereof provides that the term of the supplemental agreement is controlled by Article 37 of the master agreement. The final agreement of the current supplemental agreement states:

'IN WITNESS WHEREOF the parties hereto have set their hands and seals this 5th day of May, 1967, to be effective as of April 1, 1967.'

"7. A majority of the employees covered by the national agreement who balloted thereon voted in May, 1967, to ratify the proposal and this was reported by the International Union to Trucking Employers, Inc. on May 29, 1967.

"8. The present dispute is centered upon Article 40 of the area supplemental agreement, the contract provision covering seniority. In pertinent part, it reads as follows:

'Seniority shall prevail. A list of the employees, in the order of their seniority, shall be posted in a conspicuous place at the place of their employment.

'Terminal seniority, as measured by length of service at such terminal, shall prevail, excepting in those instances where a majority of the employees of an Employer in the Southeast area agree by vote to the contrary.

'Within sixty (60) days after effective date of this Agreement any request of any employees of an Employer for seniority other than terminal seniority shall be made to the local Union involved, and if such request is made during this period all Local Unions involved shall be notified and a

vote shall be taken of all employees involved within one hundred twenty (120) days of the effective date of this Agreement and a majority vote shall be final and binding. After these time limits no further change from terminal seniority will be made during the life of this Agreement, except as otherwise provided for in this Agreement.'

No election provided for by Article 40 was held within one hundred and twenty days of April 1, 1967, nor was any request made within sixty days of April 1, 1967. Several local unions in the six state area under the Southern Conference Area Supplemental Agreement requested in June and July, 1967, that modified seniority referenda among the employees of several truck lines subject to such supplemental agreement, including Ryder, be conducted.

"9. Since ratification of the supplemental agreement had not been determined prior to May 29, 1967, the authorized negotiating committees for the Southern Conference of Teamsters and the Southeastern Motor Carriers Labor Relations Association met in Atlanta, Georgia, on June 1, 1967, to conclude miscellaneous contract matters, including an adjustment of the time period for conducting a 'modified seniority' referendum under such agreement in view of the delay encountered in negotiating and ratifying such agreement.

"10. Specifically, the authorized employer and employee negotiators agreed that the Article 40 § 2(b) referendum could be requested by a local union within sixty days of June 1, 1967, and that any such referendum should thereafter be held within one hundred twenty days of June 1, 1967. Although the negotiators did not revise the booklet contract to show June 1, 1967, as the new base date for timing the modified seniority referenda, their oral agreement with respect thereto became common knowledge among employers, local unions, and the employees, including plaintiffs.

"11. Prior to August 25, 1967, when Ryder Birmingham employees balloted in their referendum, Local 612 posted a notice of the impending referendum procedures, conducted an explanatory meeting, and published an explanation of modified area seniority.

"12. The evidence does not disclose whether plaintiffs, or any one of them, participated in the August 25, 1967, balloting. Nor is there any evidence that plaintiffs, or any one of them, filed either a contract grievance or an internal union charge alleging any impropriety in the timing of the referendum.

"13. Although a majority of Ryder Birmingham employees voted against modified seniority on August 25, 1967, a majority of Ryder over-the-road employees in the six state area embraced within the supplemental agreement voted in favor of the proposal, thereby adopting it for all Ryder road employees in such six state area.

"14. The adoption of modified area seniority permitted numerous non-Birmingham Ryder road drivers, if laid off elsewhere in the six state area, to redomicile to Birmingham and obtain priority of work over some of plaintiffs. On October 17, 1967, Ryder posted a new seniority list prepared in accordance with the modified seniority system. Plaintiffs were substantially reduced in seniority as compared with their seniority under the prior terminal seniority system. Their reduction in seniority has substantially reduced the work allocated to such employees with a corresponding reduction of income. On October 23, 1967, a grievance was filed by seven of the plaintiffs. The first list which was posted was taken down for corrections or additions and a second, similar list was posted on October 30, 1967. A grievance addressed to this list was filed by approximately twenty of the plaintiffs on November 27, 1967.

"15. The thrust of these grievances filed with the Southeastern Area Multi-State Grievance Committee was that the referendum should be declared void for having been conducted more than one hundred and twenty days after April 1, 1967. On December 5, 1967, several of

these plaintiffs appeared and personally pleaded before such committee to which such grievances had been presented by Local 612. There is no evidence that the defendant, Local 612, breached its duty fairly to represent plaintiffs before the Multi-State Grievance Committee.

"16. Such committee decided adversely to plaintiffs on their grievances because the area negotiators had previously modified Article 40, § 2(b), by substituting June 1, 1967, for April 1, 1967, as the effective date of the supplemental agreement for the purpose of calling for and conducting a referendum on 'modified seniority'.

"17. Plaintiffs requested Local 612 and the Southern Conference of Teamsters to appeal the Multi-State Committee decision, but these bodies declined to do so, explaining that the collective bargaining agreement does not provide for such an appeal from a final Multi-State Committee award. Thereafter, when several of plaintiffs personally attempted to appeal to the Southern Conference Joint Committee on February 2, 1968, such committee dismissed the appeal as not allowable under the contract.

"18. The labor agreement requires that all issues of alleged contract violations, specifically including seniority issues under Article 40, be brought to and decided by the grievance system which includes the Multi-State Committee according to the terms of the contract. This was done."

Measured by the record, the above findings are not clearly erroneous. Upon these facts we decide the appeal.

## II

### THE DECISION

Essentially, the present controversy sprang from the delay in getting the agreement finalized. The 1964–1967 contract expired April 1. Ratification of the new contract was not achieved until May 29.

Despite the delay, the caption of the new master agreement stated that it was for the period April 1, 1967–March 31, 1970. Article 37 recited that the agreement was to be in full force and effect from April 1, 1967. The signatory clause so provided. Likewise, the supplemental agreement carried the same date.

The present dispute is centered upon the seniority provisions of Article 40. That provision is quoted at page 6 supra (typewritten draft of this opinion). On its face, in the absence of the supplemental agreement, it required seniority referendum requests to be filed not later than May 31. This was an "impossible" date because ratification did not occur until May 29.

As of May 29, the ratification date of the master agreement, numerous questions of detail remained open in the negotiation of Area Supplements. To finalize their contract, the Southeast area negotiators convened in Atlanta on June 1, 1967. Although Ryder and Local 612 had an opportunity to participate, neither did so that day. At that meeting some question arose as to when the seniority referenda would be conducted since the sixty day period designated for referendum requests (i. e., within sixty days of April 1, 1967) had already expired. Accordingly, the negotiators for both parties agreed to date the deadlines for referenda from June 1, 1967. As the trial court specifically found, the new time periods were made known throughout the bargaining unit, including Ryder and Local 612.

Beginning on June 9 requests for seniority referenda were made. The referenda were conducted on August 25, 1967, in response to requests filed within sixty days from June 1. In the intervening period, Local 612 posted a notice of the impending referendum procedures, conducted an explanatory meeting, and published an explanation of modified area seniority.

The area wide vote was decisively in favor of modified area seniority. On October 17, 1967, Ryder posted another seniority list prepared in accordance with the new list.

The District Court held, correctly we think, that the agreement, made in Atlanta, substituting June 1, 1967, as the beginning date of the referenda period was binding and effective. Alternatively, the Court further held that the adverse award of the Multi-State Grievance Committee precluded recovery by the plaintiffs, citing Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L. Ed.2d 370 (1964).

We are not concerned with cases dealing with the right of a union member under the circumstances here presented to bring a § 301 suit. The District Court held that the action was properly brought.

The controlling question is: Did the negotiators have the authority to amend an impossible date in the printed contract so as to accomplish the indisputable purpose of that contract?

The drivers say that the attempted change is invalid because both the by-laws of Local 612 and the International constitution very clearly required such a change to be in writing and ratified by the employees.

At the outset it is to be noted that while there was a manual change in dates there was no change in what the contract proposed to accomplish. The intent and purpose, indeed the positive requirement, was that the drivers should have sixty days in which to seek a referendum on any proposed seniority changes. Lacking a day or two, because of the chronological hiatus, that privilege had already expired on ratification day. Had the calendaring of the sixty day period not been corrected we might well now be facing a suit over the deprivation of the right of referendum because of a failure to protect the obvious intent of the parties. The District Court found that these drivers had every oportunity to know of the change. They did not object to the change. What they rally object to is (for them) the unfavorable outcome of the election.

The negotiators agreed to the only administrative approach by which the referenda provisions could be made effective. Rather than infringing upon the contractual rights of all members of the union, they took the only step which could have, and did, preserve those rights. We hold that this was no violation of the contract as ratified, but, rather, was an effective implementation of it. In our view, it was an administrative detail and was clearly required by the essence of the contract. The essence was that the drivers would promptly have sixty days in which to seek and to accomplish referenda on a vital issue. That essence was preserved. Thus, in reality the contract was not changed but, rather, was rendered effectual according to its true meaning, purpose, and indispensable requirements.

While the issue is contractual in nature it has its special aspects. We are not presented with a situation in which A agrees to exercise an option or perform some other act by a specific day of the calendar. A named day is here involved but it is within the total context of a contract between an employer and numerous employees. The date was not the overriding, unamendable consideration. The right, for sixty days, to call for seniority referenda was the sine qua non of the agreement.

We have cited no cases, and in an independent search, we have found none dealing, in the context here presented, with a reasonably similar situation. Therefore, applying the considerations above discussed, we are of the opinion that the manual change of dates was not only justified but was required.

In this posture of the case we need not consider the alternative ground upon which the District Court denied relief.

Affirmed.