Charles R. JOHNSON, Plaintiff,

v.

GEORGIA–PACIFIC CORPORATION, PLYWOOD DIVISION and International Woodworkers of America, AFL–CIO, Local 5–475, Defendants.

No. 86–1078.

United States District Court,
W.D. Arkansas,
El Dorado Division.

June 3, 1987.

Gene O'Daniel, Little Rock, Ark., for plaintiff.

John D. Davis, Ramsay, Cox Law Firm, Pine Bluff, Ark., for G-P. Corp.

Mark Allen, Gerber, Berger & Agee, Memphis, Tenn., for Local 5-475.

## MEMORANDUM OPINION AND ORDER

OREN HARRIS, Senior District Judge.

Before the Court is a Motion for Summary Judgment filed by defendant International Woodworkers of America, AFL-CIO, Local 5-475, (Union) in the above styled cause. Plaintiff, Charles Johnson, (Johnson) commenced this action against defendants, Georgia-Pacific Corporation (GP) and the Union seeking an award of damages. Johnson alleges that GP breached the collective bargaining agreement in effect Ocotber 10, 1985, when he was terminated without cause.[1] Johnson asserts that the Union breached its duty of fair representation in connection with his termination and the subsequent decision to not proceed with his grievance to arbitration as such procedure is outlined in the collective bargaining agreement. Jurisdiction is conferred upon this Court under section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. 141 *et seq.*, and 28 U.S.C. § 1331.

The Court incorporates herein findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P.

The Court is guided in its consideration of the summary judgment motion by Rule 56, F.R.Civ.P. Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

The Union is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. 142, 152. GP is an employer in an industry affecting commerce within the meaning of 29 U.S.C. 142, 152. The Union was at all time material herein the certified collective bargaining representative of certain hourly workers of GP employed at its Crossett, Arkansas, plywood operation, including Johnson.

Johnson began working for GP on March 27, 1967. He was discharged on October 10, 1985, for insubordination and disobedience. On October 9, 1985, at the commencement of his regular working shift within the plywood operation of GP, Johnson assumed a position on the "glue line" as a core feeder, the position in which he had been working for a substantial period of time. The grievance report prepared on Johnson's behalf on October 10, 1985, reflects that Johnson was a line operator in the gluing department.

Soon after beginning work the morning of October 9, a co-employee, Mike Kelly, instructed Johnson to cease working as a core feeder. Johnson refused to relinquish his position. Kelly allowed Johnson to remain on the glue line. Soon thereafter, A.J. Harris, a superintendent for GP, approached Johnson and instructed Johnson to remove himself from the glue line position, stating that Johnson had been assigned to Plant 1 (another area in the plywood operation).

Despite the direct order from the superintendent, Johnson refused to leave his position. Johnson testified in his deposition that he informed Harris that "If you want to get me down, you have to get the law to get me down." Tracy Ray, a union shop steward, and Harvey Gunter, a supervisor, were also present and witnessed this confrontation. Harris repeated his order that Johnson "get down off the line" on at least three occasions, assuring that Tracy Ray

1. Georgia-Pacific has not filed a Motion for Summary Judgment in this matter. Thus, the Court opinion herein shall address only the count of the complaint pertaining to the alleged breach of duty of fair representation by the Union. The Court merely notes the cause of action alleged against GP for purposes of clear and complete delineation of the issues presented by this action as a whole. There should be no inferences drawn from the ruling of the Court in this opinion as to the merit of plaintiff's claim against GP.

heard this direct order and Johnson's response thereto. On each occasion Johnson refused to comply with the order. Harris informed Johnson that he was suspended at that time. After reflecting for a moment on the situation, Johnson removed himself from the core feeder position and walked to the locker room where he cleaned out his locker.

On October 10, 1985, prior to his termination, but while he was suspended, Johnson was afforded a meeting with Jesse Riley, Industrial Relations Manager for GP and his shop steward, Tracy Ray. The purpose of the meeting was to attempt to get Johnson reinstated. In that meeting, Riley inquired as to why Johnson had refused the transfer to Plant 1. In response Johnson only stated that he did not want to leave his friends on the glue line.

Johnson was terminated on October 10, 1985, for violation of Plant Rules, Group 2 which provide as follows:

First Offense—Discharge

\* \* \* \* \* \*

2. Being insubordinate or disobedient. Failure to follow an order which would result in injury to the employee or a fellow employee shall not be considered insubordination, or disobedience under this term.

\* \* \* \* \* \*

Johnson admitted in his deposition that he was familiar with the Plant Rules and Rule Number 2, Group 2 in particular. He also admitted that for him to "get down off the line" would not cause any injury to himself or to any other employee.

A written grievance was filed on October 10, 1985, protesting "the Company's violation of Section 10 and possibly others of the current labor agreement. Improper discharge of (Johnson) on 9–10–85 (sic)." The Union requested reinstatement with full seniority and full benefits. On October 11, 1985, the first step grievance procedure was submitted by Tracy Ray. October 14, 1985, the grievance was denied in writing by Harvey Gunter for GP.

The matter was referred to the Union Grievance Committee for step 2 of the grievance procedure as outlined in the collective bargaining agreement. The committee met with management representatives in attempt to resolve the matter, with reinstatement being the objective of the committee. The management representatives denied the step 2 grievance, holding firm to its position that the termination was for just cause under Plant Rule Number 2, Group 2. On November 1, 1985, the written denial of the step 2 grievance was entered.

Step 3 of the grievance procedure provides for final, binding arbitration. The committee met on December 17, 1985, to consider the merits of the grievance and possibility of its submission to step 3 proceedings. The committee members explored the facts surrounding Johnson's suspension and termination. The committee determined that Johnson's procedural rights had been fully satisfied by GP prior to suspension and termination. Harvey instructed Johnson, in the presence of his supervisor and the shop steward, to remove himself from the glue line. This direct order was disobeyed. The committee noted that Johnson had admitted that he disobeyed an instruction from his supervisor.

Thereupon, the committee determined that Johnson's conduct was in direct contravention of the Plant Rule 2, Group 2 and the well recognized plant policy of "work first, grieve later." Johnson admitted in his deposition that he was aware of this policy. Thus, the committee voted to not recommend arbitration.

The issue of arbitration was presented to the local in a monthly membership meeting on December 21, 1985. After brief discussion, the motion was made and seconded to accept the committee's recommendation. The motion passed by a majority vote of the membership present. Thus, the matter of Johnson's grievance did not proceed to arbitration. Thereafter, Johnson commenced this action.

■ The United States Supreme Court has recognized the existance of a statutory duty of fair representation owed by a union to its membership. *See: Steele v. Louisville & Nashville Railroad,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73

S.Ct. 681, 97 L.Ed. 1048 (1953); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed. 2d 842 (1967). This duty mandates that a union represent fairly all of the workers covered under a particular collective bargaining agreement. It is a "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. at 177, 87 S.Ct. at 910. *See also: Smith v. Hussmann Refrigerator Co.*, 619 F.2d 1229 (8th Cir.1980), (en banc), *cert. denied* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). A breach of this statutory duty of fair representation occurs only when the conduct of union toward any of its members covered by the agreement is arbitrary, discriminatory or in bad faith. *Vaca v. Sipes, supra; Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370; *Smith v. Hussmann Refrigerator Co., supra.*

■ Although a union may not arbitrarily ignore meritorious grievances or process them in a perfunctory fashion, the employee does not have an absolute right to have his grievance taken to arbitration regardless of the provisions of the collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. at 199, 87 S.Ct. at 921. Part and parcel of the dispute resolution machinery is the underlying premise that the employer and the union will endeavor in good faith to settle grievances short of arbitration, thus ending frivolous grievances prior to the invocation of the arbitration process. "If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined." *Id.*

■ For the dispute resolution machinery to function successfully, the union must be afforded the discretion to decide whether a particular case has sufficient merit to warrant the costly, time-consuming process of arbitration, if such discretion is exercised in good faith and honestly. Otherwise, the union's freedom to settle claims would be limited severely. Settlement of grievances is encouraged in the law. *Vaca v. Sipes, supra.*

■ In order for Johnson to prevail upon his claim he must show that the decision of the grievance committee and the union was arbitrary, discriminatory or in bad faith. From a review of the motion and memorandum in support thereof, the deposition testimony of Johnson, affidavits submitted by the Union and the record as a whole, the Court finds that the Union diligently represented Johnson through steps 1 and 2 of the grievance procedure. The third step would have been arbitration.

Although the decision was made to not demand arbitration, the Court finds that such decision was not arbitrary, discriminatory or in bad faith. Rather, the undisputed facts shown that plaintiff was fairly and adequately represented by the Union through steps 1 and 2 of the grievance procedure. There is no doubt that the Union actively and in good faith pursued this grievance through those two steps. The Union exercised it discretion and determined that the grievance was frivolous. Thus, it appropriately voted, upon sound recommendation from the committee, to not take the matter to arbitration.

The Court finds that the Union did not act arbitrarily or discriminatorily against Johnson. Further, the Court finds that the Union did not act in bad faith. The Court finds that the Union did not handle Johnson's grievance in a perfunctory manner. The Union engaged in good faith negotiations with GP seeking reinstatement with all benefits. Simply because the Union did not believe the grievance was meritorious does not compel the conclusion that such belief caused the Union to engage in less than good faith negotiation. Rather, the facts as outlined above dispel any such conclusion.

The allegation that Johnson was not adequately represented because of some remote incident concerning himself and Union President Steve Price is not persuasive. The committee on which Price sat was comprised of eight individual union members. Each had a part in the investigation of the matter, its discussion and the ultimate decision rendered. To say that these other seven members of the committee merely

approved or "rubber stamped" Price's decision is not supported by any evidence or allegation in this record. Johnson's own testimony reflects that he had several contacts with at least one member of the committee, John Davis, throughout the proceeding. Davis kept Johnson well informed of the status of the matter. After the committee's decision was made, the matter was submitted to the general membership for a vote, at which time Johnson's arbitration bid was defeated.

Based upon the foregoing facts and the law applicable herein, the Court can only conclude that summary judgment in this matter in favor of the Union is proper. There is no genuine issue of material fact and the Union is entitled to judgment as a matter of law. The Union fully and adequately discharged its duty of fair representation. The complaint insofar as it alleges a claim against the Union shall be dismissed with prejudice.

IT IS THEREFORE CONSIDERED, ORDERED, AND ADJUDGED that the Motion for Summary Judgment filed on behalf of the International Woodworkers of America, AFL–CIO, Local 5–475, be and the same is hereby granted. The complaint of plaintiff Charles Johnson is hereby dismissed with prejudice as to the defendant Union.